United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MUI HO, SHELDA ANGLIN, and TED FLORY, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>TOYOTA MOTOR CORPORATION and TOYOTA MOTOR SALES, U.S.A., INC.,<br><br>        Defendants. | Case No. 12-2672 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' <u>MOTION TO DISMISS</u> |

## I.  <u>INTRODUCTION</u>

Now before the Court is Defendants Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor Corporation's (collectively "Defendants") motion to dismiss Plaintiffs Mui Ho, Shelda Anglin, and Ted Flory's ("Plaintiffs") First Amended Class Action Complaint.  ECF No. 27 ("MTD"); ECF No. 21 ("FAC").  The motion is fully briefed, ECF Nos. 32 ("Opp'n"),[1] 34 ("Reply"), and suitable

---

[1] The Court is concerned that Plaintiffs' excessively long footnotes are attempts to circumvent the Local Rules' page limits by pushing material that should properly be in the body of Plaintiffs' argument into the single-spaced footnote format.  <u>See, e.g.</u>, Opp'n at 10 nn.5-6.; Civ. L.R. 7-4(b).  Plaintiffs are warned

United States District Court
For the Northern District of California

1  for decision without oral argument, Civ. L.R. 7-1(b).  For the

2  reasons explained below, the Court GRANTS in part and DENIES in

3  part Defendants' motion.

4

5  **II.   BACKGROUND**

6       The named Plaintiffs are three purchasers of Defendants' Lexus

7  RX vehicles produced between the years of 2004 and 2009 (the "Class

8  Vehicles").  FAC ¶ 1.  They bring this putative class action on

9  their own behalf and that of all other purchasers or lessees of the

10  Class Vehicles.  Id. ¶¶ 1, 80-89.  Plaintiffs claim that the Class

11  Vehicles' headlamp assemblies are defective because they are prone

12  to condensation and moisture retention.  Id. ¶¶ 3-4.  These

13  problems eventually cause the headlamps to become dangerously dim

14  or to fail completely, posing safety hazards and creating expense

15  for the Class Vehicles' owners.  Id. ¶¶ 5-7.  Plaintiffs allege

16  harms based on these hazards and expenses.  Id. ¶ 17-19.

17       Plaintiffs claim that they had no way to discover the alleged

18  defects until the headlamps began to pose problems.  See id. ¶¶ 48-

19  49.  However, they claim that Defendants were aware of the Class

20  Vehicles' headlamp problems as early as 2004, due to Defendants'

21  exclusive knowledge of and access to facts like "pre-release

22  testing data, early consumer complaints . . . , testing, and other

23  internal investigation conducted in response to those complaints."

24  Id. ¶¶ 48-49.  Despite this alleged knowledge, Defendants never

25  publicly disclosed any defects or issued a recall.  Id. ¶¶ 11-19,

26  57-58.  According to Plaintiffs, Defendants chose instead to

27

28  that use of these tactics in future filings could result in non-
    compliant portions of their papers being stricken.

provide haphazard "temporary fixes" that provided stopgap relief to
consumers until the problem inevitably manifested again after the
Class Vehicles' express warranty periods.  Id. ¶¶ 11-19.  As
further proof of Defendants' knowledge of the alleged defect and
failure to disclose it, Plaintiffs point to Defendants' issuance of
two technical service informational bulletins ("TSIB(s)") to their
dealers in 2007 and 2010.  Id.  Both TSIBs addressed the alleged
headlamp defect.  Id.  The 2007 TSIB stated that dealers could
provide new headlamps to replace the old ones, and the 2010 TSIB
informed dealers that "improved headlamp housings" were available
to replace the old headlamps.  Id. ¶¶ 8-12.  Plaintiffs allege that
all of these repair parts were defective too.  Id.

Plaintiffs Ho and Flory bought used Class Vehicles in 2007 and
2011, respectively.  Id. ¶¶ 20, 30.  Plaintiff Anglin bought a new
Class Vehicle from an authorized dealer in 2006.  Id. ¶ 35.
Plaintiff Ho complained about her passenger side headlamp's
moisture problems three times, in January 2008, January 2010, and
January 2012.  Id. ¶¶ 20-28.  Each time she had it replaced at one
of Defendants' dealerships.  Id.  Her 2008 repair was covered under
her warranty, but Plaintiff Ho paid $1,000 and $155.88,
respectively, for the latter two repairs.  Id. ¶¶ 24, 28.
Plaintiff Anglin complained about a similar problem in March 2008
and again in either December 2008 or January 2009.  Id. ¶¶ 32-33.
On her first visit, Defendants' dealer verified her complaint but
refused to repair it, contending that such moisture issues were
normal and not repairable.  Id. ¶ 32.  On the second visit, the
dealer again verified her problems and refused repair, stating that
water intrusion and oxidation were not covered under her warranty.

**United States District Court**
For the Northern District of California

1  Id. ¶ 33.  Plaintiff Flory first complained about his headlamp in

2  January 2012, bringing it to a dealer per Defendants' instructions

3  in February 2012.  Id. ¶¶ 37-38.  There he was told that Toyota

4  would repair the headlamp for $185.  Id.  He refused the repair and

5  the charges, choosing instead to attempt to remedy his headlamp's

6  moisture problems on his own.  Id. ¶ 38.

7      Based on the facts described above, Plaintiffs initially

8  asserted six causes of action against Defendants: (1) violation of

9  California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code

10 §§ 1750 et seq.; (2) violation of California's Unfair Competition

11 Law ("UCL"), Cal. Bus & Prof. Code §§ 17200 et seq., pursuant to

12 California's Secret Warranty Law, Cal. Civ. Code §§ 1795.90 et

13 seq.; (3) violation of the UCL on grounds other than violation of

14 California's Secret Warranty Law; (4) fraud by omission; (5) breach

15 of implied warranty pursuant to the Song-Beverly Consumer Warranty

16 Act, Cal. Civ. Code §§ 1792 and 1791.1 et seq.; and (6) breach of

17 express warranty under California Commercial Code section 2313,

18 exclusively asserted against Defendant TMS.  In their opposition

19 brief, Plaintiffs withdrew their UCL claim based on the California

20 Secret Warranty Law.  Opp'n at 24 n.23.  Defendants' motion to

21 dismiss asserts that Plaintiffs fail to state claims under any of

22 the remaining five causes of action.  See MTD at 1-2.

23

24 **III.  LEGAL STANDARD**

25      **A.  Motions to Dismiss**

26      A motion to dismiss under Federal Rule of Civil Procedure

27 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

28 Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

**United States District Court**
For the Northern District of California

1  on the lack of a cognizable legal theory or the absence of

2  sufficient facts alleged under a cognizable legal theory."

3  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

4  1988).  "When there are well-pleaded factual allegations, a court

5  should assume their veracity and then determine whether they

6  plausibly give rise to an entitlement to relief."  Ashcroft v.

7  Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

8  must accept as true all of the allegations contained in a complaint

9  is inapplicable to legal conclusions.  Threadbare recitals of the

10 elements of a cause of action, supported by mere conclusory

11 statements, do not suffice."  Id. (citing Bell Atl. Corp. v.

12 Twombly, 550 U.S. 544, 555 (2007)).  The court's review is

13 generally "limited to the complaint, materials incorporated into

14 the complaint by reference, and matters of which the court may take

15 judicial notice."  Metzler Inv. GMBH v. Corinthian Colls., Inc.,

16 540 F.3d 1049, 1061 (9th Cir. 2008) (citing Tellabs, Inc. v. Makor

17 Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

18       **B.   Rule 9(b)**

19       Claims sounding in fraud are subject to the heightened

20 pleading requirements of Federal Rule of Civil Procedure 9(b),

21 which requires that a plaintiff alleging fraud "must state with

22 particularity the circumstances constituting fraud."  See Kearns v.

23 Ford Motor Co., 567 F. 3d 1120, 1124 (9th Cir. 2009).  "To satisfy

24 Rule 9(b), a pleading must identify the who, what, when, where, and

25 how of the misconduct charged, as well as what is false or

26 misleading about [the purportedly fraudulent] statement, and why it

27 is false."  United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,

28 Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks

1  and citations omitted).

2

3  **IV.   DISCUSSION**

4      **A.   Warranty Claims**

5          **i.   Breach of Implied Warranty**

6     The Song-Beverly Consumer Warranty Act, Cal. Civ. Code §

7  1792 ("Song-Beverly"), provides that "every sale of consumer goods

8  that are sold at retail in [California] shall be accompanied by the

9  manufacturer's and the retail seller's implied warranty that the

10  goods are merchantable." "Consumer goods" means "any new product

11  or part thereof that is used, bought, or leased for use primarily

12  for personal, family, or household purposes, except for clothing

13  and consumables." Id. § 1791(a).

14     Defendants argue that Plaintiffs' claims under Song-Beverly

15  fail as to Plaintiffs Ho and Flory, because they purchased used

16  Class Vehicles. MTD at 5. Defendants apparently concede that

17  Plaintiff Anglin has a valid claim under this cause of action,

18  since they do not argue otherwise. See id.; Opp'n at 23 n.20.

19  Plaintiffs respond as to Plaintiff Ho that Song-Beverly applies to

20  used goods notwithstanding section 1791 if an express warranty was

21  given during the used goods' sale. They claim that she may plead

22  an implied warranty claim under Song-Beverly, because there is no

23  dispute that she was given an express warranty when she bought her

24  used Class Vehicle, and because a defendant can be held to have

25  breached an implied warranty by selling a product with a latent

26  defect. Opp'n at 23 (citing Cal. Civ. Code § 1795.5(c); Mexia v.

27  Rinker Boat Co., 174 Cal. App. 4th 1297, 1304-05 (Cal. Ct. App.

28  2009)). Plaintiffs concede that they have no claim as to Plaintiff

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Flory under Song-Beverly, because his express warranty had expired

2  by the time he purchased his Class Vehicle.  <u>Id.</u> at 24.

3      The Court finds that Plaintiffs have not pled a breach of

4  implied warranty as to Plaintiff Ho.  Song-Beverly provides that

5  the duration of the implied warranty for used goods extends only up

6  to three months after purchase from a distributor or retail seller.

7  Plaintiffs did not plead exactly when or from whom Plaintiff Ho

8  purchased her Class Vehicle in 2007, and the Court cannot assume,

9  without facts, that Plaintiff Ho's purchase of her Class Vehicle

10 fell within Song-Beverly's time limits, or that she purchased her

11 Class Vehicle from a "distributor or retail seller" per Song-

12 Beverly.

13     As to Plaintiff Ho, Plaintiffs' claim for breach of implied

14 warranty is DISMISSED.  Plaintiffs have leave to amend this claim

15 if they can plead that Plaintiff Ho purchased her Class Vehicle

16 from a dealer or retailer seller within the implied warranty period

17 provided by Song-Beverly.  This claim is undisturbed as to

18 Plaintiff Anglin.

19              **ii.**    **Breach of Express Warranty**

20     Plaintiffs' claim for breach of express warranty is based on

21 California Commercial Code section 2313.  "To prevail on a breach

22 of express warranty claim, the plaintiff must prove: (1) the

23 seller's statements constitute an affirmation of fact or promise or

24 a description of the goods; (2) the statement was part of the basis

25 of the bargain; and (3) the warranty was breached."  <u>Weinstat v.</u>

26 <u>Dentsply Int'l, Inc.</u>, 180 Cal. App. 4th 1213, 1227 (Cal. Ct. App.

27 2010) (internal quotation marks and citation omitted).

28     The Class Vehicles come equipped with a four-year, 50,000-mile

New Vehicle Limited Warranty ("NVLW"), which covers "repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by [Defendants] . . . ." FAC ¶ 142. Plaintiffs assert against Defendant TMS alone that, in responding to the Class Vehicles' headlamp problems with temporary fixes and defective parts, and in Plaintiff Anglin's case refusing to honor the NVLW, TMS breached an express warranty. Opp'n at 20-21 (citing FAC ¶¶ 96, 141-42). Plaintiffs concede that Plaintiff Flory has no standing to bring a claim under this cause of action, thereby limiting their claim to Plaintiffs Ho and Anglin. See Opp'n at 23 n.19. The parties do not appear to contest that the NVLW is an affirmation of fact or a promise, or that it was part of the basis of the bargain. They contest whether it was breached and whether Plaintiffs have standing to bring claims for breach of express warranty. See MTD at 5-10; Reply at 13-14.

### a. **Plaintiff Ho**

As to Plaintiff Ho, Plaintiffs claim that "[b]y replacing a defective part with another defective part in [Plaintiff Ho's] vehicle in January 2008 . . . [TMS] breached its NVLW because it failed to 'correct [the] defect' under its warranty." Opp'n at 21. In so clarifying their allegations from the FAC, Plaintiffs apparently concede that Plaintiff Ho's 2010 and 2012 repairs fall outside the express warranty, since they do not dispute Defendants' arguments that Plaintiff Ho's Class Vehicle had exceeded the NVLW's mileage limitations by those points. See Opp'n at 21-22; MTD at 8-10.

The Court finds that Plaintiffs fail to plead a breach of express warranty as to Plaintiff Ho. The NVLW covers "repairs and

United States District Court
For the Northern District of California

adjustments needed to correct defects in materials or workmanship

of any part supplied by [Defendants]," and regardless of any

alleged defects in replacement parts, that is what Defendants

provided to Plaintiff Ho.  Defendant TMS did not breach the NVLW by

acting in conformance with it during Plaintiff Ho's 2008 repair.

Moreover, the fact that the problem arose again after the warranty

period, in 2010 and 2012, cannot be the basis of a breach of

express warranty claim.  The California Court of Appeals in

Daugherty v. American Honda Motor Company Inc., 144 Cal. App. 4th

824 (Cal. Ct. App. 2006), made that point of law very clear:

> Opening the door to [a theory of liability
> based on a product's failure outside the
> warranty period] would change the landscape
> of warranty and product liability law in
> California.  Failure of a product to last
> forever would become a 'defect,' a
> manufacturer would no longer be able to
> issue limited warranties, and product defect
> litigation would become as widespread as
> manufacturing itself.

Id. at 829; see also Anunziato v. eMachines, Inc., 402 F. Supp. 2d

1133, 1135-36 (C.D. Cal. 2005) (applying that principle), Brothers

v. Hewlett-Packard Co., No. C 06-2254 RMW, 2006 U.S. Dist. LEXIS

82027 at *25 (N.D. Cal. Oct. 31, 2006) (same).

    Accordingly, Plaintiffs' claim for breach of express warranty

is therefore DISMISSED WITH PREJUDICE as to Plaintiff Ho.

### b.  **Plaintiff Anglin**

    As to Plaintiff Anglin, Plaintiffs assert that Defendants

breached the NVLW when they refused to repair Plaintiff Anglin's

headlamps during the warranty period.  FAC ¶¶ 32-33.  Defendants

argue that Plaintiffs do not plead a claim as to Plaintiff Anglin

because she did not contact Toyota directly to seek assistance with

her warranty claim, as the NVLW directs.  MTD at 10.  Rather,

United States District Court
For the Northern District of California

1  Plaintiff Anglin only contacted a Toyota-licensed servicing dealer.

2  Id.  Defendants claim that to bring a proper breach of express

3  warranty as to Plaintiff Anglin, Plaintiffs must have first

4  notified Defendants of the problem.  Id.

5      In response, Plaintiffs rely primarily on two cases, Keegan v.

6  American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 950-51 (C.D.

7  Cal. 2012), and In re Toyota Motor Corp. Unintended Acceleration

8  Marketing, Sales Practices, and Products Liab. Litig., 754 F. Supp.

9  2d 1145, 1173 (C.D. Cal. 2010).  These cases in turn rely chiefly

10  on Justice Traynor's opinion in Greenman v. Yuba Power Prods, Inc.,

11  59 Cal. 2d 57 (Cal. 1963), which held that timely notice of a

12  breach of an express warranty is not required if the action is

13  against a manufacturer and is brought "by injured consumers against

14  manufacturers with whom they have not dealt." Id. at 61.  The

15  rationale for that holding was that "[b]etween the immediate

16  parties to the sale [the notice requirement] is a sound commercial

17  rule, designed to protect the seller against unduly delayed claims

18  for damages.  As applied to personal injuries, and notice to a

19  remote seller, it becomes a booby-trap for the unwary." Id.

20  Defendants respond that Greenman and its progeny do not apply in a

21  commercial setting, since the plaintiff in Greenman was physically

22  injured.  Reply at 14.  Defendants also argue, without any

23  elaboration, that Keegan and Toyota stretched Greenman's holding

24  "to an illogical extreme." Id.

25      In Keegan, the plaintiff bought a car from a dealership and

26  then sued the manufacturer instead of the dealership for breach of

27  express warranty, alleging that the car's tires prematurely wore

28  down and posed a safety risk.  838 F. Supp. 2d at 949-51.  The

**United States District Court**
For the Northern District of California

1   defendants in Keegan argued that the plaintiff should have given

2   notice to the dealership first, thereby giving them an opportunity

3   to cure the defect, rather than suing the manufacturer immediately.

4   Id. at 950-51.  Rejecting this argument, the Keegan court followed

5   Greenman, holding that "under California law, a consumer need not

6   provide notice to a manufacturer before filing suit against them."

7   Id. (citing Greenman, 59 Cal. 2d at 61).

8       In Toyota, the plaintiff bought a car from a dealership and

9   sued the manufacturer for breach of express warranty because the

10  car would accelerate unexpectedly and uncontrollably.  754 F. Supp.

11  2d at 1171-72, 1180.  This posed an obvious safety hazard.  Id.

12  The court held that the plaintiffs who bought their cars directly

13  from the manufacturer were subject to the notice requirement, but

14  that as to the plaintiffs who bought their cars from dealerships,

15  the notice requirement was "excused as to a manufacturer with which

16  the purchaser did not deal."  Id. at 1180.

17      The Court sees no reason to conclude, as Defendants urge, that

18  the Keegan or Toyota courts stretched Greenman to an illogical

19  extreme.  Rather, those courts held, consistent with California

20  law, that where a customer pleads injuries arising from a product

21  purchased from a dealer, the notice requirement as to the

22  manufacturer is waived.  See, e.g., Greenman, 59 Cal. 2d at 61.

23  The Court finds that Plaintiffs did not need to provide Defendants

24  with notice of Plaintiff Anglin's claims before bringing a breach

25  of express notice claim as to her.  Further, like other courts in

26  this district and elsewhere, the Court finds that Greenman imposes

27  no physical injury requirement on plaintiffs who bring a breach of

28  express warranty claim against a manufacturer for a defective

product purchased from a dealer.  See, e.g., Keegan, 838 F. Supp. 2d at 951; Toyota, 754 F. Supp. 2d at 1171-72; Greenman, 59 Cal. 2d at 61.

The Court finds that Plaintiffs sufficiently pled a breach of express warranty claim as to Plaintiff Anglin.  Defendants' motion is DENIED as to this claim.

## B.  **Fraud Claims**

Plaintiffs' claims under the CLRA and UCL, like their fraud by omission claim, sound in fraud because plaintiffs allege "a unified course of fraudulent conduct and rely entirely on that conduct" in bringing these claims.  Kearns, 567 F. 3d at 1124.  These claims are therefore subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).  See id. ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

### i.  **CLRA**

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770. Plaintiffs rely on sections 1770(a)(5) and 1770(a)(7) of the CLRA, which respectively prohibit "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

These sections of the CLRA are held to encompass both representations, per the explicit text of the statute, as well as omissions.  Daugherty, 144 Cal. App. 4th at 835.  To be actionable,

an omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Id. A fact is material, rendering a defendant potentially obligated to disclose it, if a "reasonable consumer would deem it important in determining how to act in the transaction at issue." Collins, 202 Cal. App. 4th at 255. When "a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defects cannot be 'merely' the cost of the product's repair . . . rather, for the omission to be material, the failure must pose 'safety concerns.'" Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citing Daugherty, 144 Cal. App. 4th at 835-38). Therefore, "under California law . . . [a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." Id. at 988; see also Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2012).

Nondisclosure or concealment of a material fact that a defendant was obliged to disclose can be actionable in four situations: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact. LiMandri v. Judkins, 52 Cal. App. 4th 326, 336-37 (Cal. Ct. App. 1997). As the Ninth Circuit has recently cautioned, in the context of product defect claims, "California courts have generally rejected a broad obligation to

United States District Court
For the Northern District of California

1  disclose." <u>Wilson</u>, 668 F.3d at 1142.

2      Plaintiffs' CLRA claims are based on their allegations that

3  Defendants had a duty to disclose the alleged defect's safety and

4  cost ramifications but fraudulently refused to do so.[2]  <u>See</u> FAC ¶¶

5  94-104, Opp'n at 7-8.[3]  Plaintiffs allege that Defendants' failure

6  to disclose these facts is actionable because (1) Defendants had

7  exclusive knowledge of the material fact that the headlamps were

8  defective, or, alternatively, (2) Defendants actively concealed

9  that material fact.  <u>See</u> Opp'n at 15-16.  Both theories require the

10 existence of a material fact.

11          a.    **The Class Vehicles' Headlamp Problem Was**

12                **Material**

13     Plaintiffs allege that the Class Vehicles' headlamp problems

14 were inherently unsafe because the headlamps could shut off

15 randomly, posing a safety hazard when driving at night or in unsafe

16 conditions.[4]  Plaintiffs further allege that they would not have

17 purchased the Class Vehicles had they known of the headlamps'

18 [2] Plaintiffs argue in a footnote that Defendants waived their right

19 to respond to Plaintiffs' arguments about safety by not
   anticipating Plaintiffs' reliance on such arguments and rebutting

20 them in its MTD.  <u>See</u> Opp'n at 9 n.3.  This argument fails.
   Defendants raised the issue, however briefly, and cannot

21 realistically be expected to predict and rebut every argument
   Plaintiffs might make in their opposition brief.

22 [3] In clarifying this theory in their opposition brief, Plaintiffs

23 apparently abandon the FAC's allegations that Defendants made
   explicit representations under the CLRA.  <u>See</u> FAC ¶ 94.

24 [4] Plaintiffs also argue for a separate duty to disclose the

25 headlamp defect within the warranty period, based on material non-
   safety reasons, but these arguments are not supported by the law,

26 and the Court need not address them since it finds a duty to
   disclose for safety reasons.  <u>See</u> <u>Ford Motor</u>, 749 F. Supp. 2d at

27 987 (stating that for an omission to be material, the failure to
   disclose must pose safety concerns) (citing <u>Daugherty</u>, 144 Cal.

28 App. 4th at 835-38).

1    issues.  FAC ¶ 17.  Defendants argue that <u>Daugherty</u> and an earlier

2    case, <u>Bardin v. DaimlerChrysler Corp.</u>, 136 Cal. App. 4th 1255,

3    1261-62 (Cal. Ct. App. 2006), require a plaintiff to have actually

4    been injured before an omission as to an alleged safety defect can

5    be held material and actionable.  <u>See</u> Reply at 5-8.

6         Defendants are wrong.  <u>Daugherty</u> stated, as Defendants quote,

7    that a duty to disclose may arise if a plaintiff alleges "physical

8    injury <u>or</u> . . . safety concerns posed by the defect." <u>Daugherty</u>,

9    144 Cal. App. 4th at 836 (emphasis added) (citing <u>Bardin</u>, 136 Cal.

10   App. 4th at 1261-62).  <u>Daugherty</u> and cases following it, including

11   <u>Falk v. General Motors Corp.</u>, 496 F. Supp. 2d 1088 (N.D. Cal.

12   2007), which Defendants also cite, held that a fact can give rise

13   to a duty to disclose and an actionable omission if it implicates

14   safety concerns that a reasonable consumer would find material.

15   <u>Falk</u>, 496 F. Supp. 2d at 1096-97; <u>Daugherty</u>, 144 Cal. App. 4th at

16   836.  This is a basic rule of California law.  Contrary to

17   Defendants' concerns, Reply at 8, this uncontroversial holding does

18   not render the word "safety" in a plaintiff's pleadings a talisman

19   that forces a duty to disclose -- plaintiffs must still plead facts

20   showing a material safety defect.  Nor does it mean that a

21   product's failure to last forever is an actionable defect, since

22   such a failure is obviously distinct from a product's safety risks.

23   <u>See</u> <u>id.</u>  Defendants' attempts to restate the rule of <u>Daugherty</u> and

24   subsequent cases are unavailing.

25        Defendants also cite the appellate decision from <u>Smith v.</u>

26   <u>Ford Motor Company</u>, 462 Fed. App'x 660, 663 (9th Cir. 2011), <u>aff'g</u>

27   749 F. Supp. 2d 980 (N.D. Cal. 2010), to support their contention

28   that Plaintiffs' alleged "safety risk" was "inherently speculative

or implausible" and therefore cannot be the basis for a duty to disclose.  In <u>Ford Motor</u>, the Ninth Circuit affirmed the district court's finding that the plaintiffs did not plead a safety defect because they did not adequately show how problems with a car's ignition lock (i.e., a driver's inability to start or shut off the car's engine) posed an unreasonable safety hazard.  <u>Id.</u>

In the instant matter, the Court finds that Plaintiffs successfully showed that the alleged defect posed a genuine safety risk because a headlamp flickering or going out at night or in inclement weather could put the car's driver in danger.  A reasonable consumer would consider this risk material because of the inherent risks of physical injury in the event of a headlamp-related accident, or the costs associated with continually repairing problematic headlamps.  Moreover, Plaintiffs point to sections of the California Vehicular Code requiring working headlamps for safety purposes, providing further support for their claim that defective or inoperative headlamps pose a public safety hazard.  <u>See</u> FAC ¶¶ 51 (citing Cal. Veh. Code § 24400).  Defendants respond that the possibility of headlamp failure after years of use is not actually an "unreasonable safety risk," and that the accumulation of water in the Class Vehicles' headlamps is "readily observable," Reply at 9, but these disputes raise questions of fact that are inappropriate for a Rule 12(b)(6) motion to dismiss.

The Court finds that Plaintiffs have adequately alleged that Defendants had a duty to disclose the headlamp problems.

> **b.   <u>Exclusive Knowledge of a Material Fact</u>**

An actionable omission can arise "when the defendant had exclusive knowledge of material facts not known to the plaintiff."

16

United States District Court
For the Northern District of California

1  Judkins, 52 Cal. App. 4th at 337.  As discussed above, Plaintiffs

2  adequately alleged that the Class Vehicles' headlamp problem is

3  material.  Section IV.B.i.a, supra.  Plaintiffs allege that

4  Defendants had a duty to disclose facts about the headlamp defect

5  because they had exclusive knowledge of those facts.  Opp'n at 15.

6  To support this allegation, Plaintiffs claim that Defendants had

7  non-public, internal data about the Class Vehicles' headlamp

8  problems, including "pre-release testing data, early consumer

9  complaints about the defect to Defendants' dealers who are their

10  agents for vehicle repairs, dealership repair orders, testing

11  conducted in response to those complaints, and other internal

12  sources."  Id.

13      Defendants claim that Plaintiffs' pleadings are conclusory and

14  that Plaintiffs merely parroted boilerplate allegations similar to

15  those in other class actions.  See Reply at 10-11.  These are not

16  compelling responses.  Plaintiffs sufficiently alleged enough non-

17  conclusory facts to support their claim.  At this stage of

18  litigation, Plaintiffs have provided the Court with sufficient

19  detail to make a determination about Defendants' knowledge relative

20  to that of its customers.

21      The Court finds that Plaintiffs' allegations support their

22  claims that Defendants had exclusive knowledge of the headlamp

23  issue such that a failure to disclose it would be actionable.

24              c.   **Active Concealment of Material Facts**

25      "[W]hen the defendant actively conceals a material fact from

26  the plaintiff," a failure to disclose that fact can be actionable.

27  Judkins, 52 Cal. App. 4th at 337.  To state a claim for active

28  concealment, a plaintiff must plead the following five elements:

17

**United States District Court**
For the Northern District of California

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

Lovejoy v. AT&T Corp., 119 Cal. App. 4th 151, 157 (Cal. Ct. App. 2004). These are essentially the same elements of a fraud by omission claim. Compare id. with SCC Acquisitions, Inc. v. Cent. Pac. Bank., 207 Cal. App. 4th 859, 863 (Cal. Ct. App. 2012) (providing fraud by omission elements).

Plaintiffs adequately pled that the Class Vehicles' headlamp problem was material and that Defendants had a duty to disclose it. See Section IV.B.i.a supra. Plaintiffs allege the elements of knowledge and intent to conceal by citing to multiple other consumers' similar complaints, as well as Defendants' decisions to repair Class Vehicles' headlamps only temporarily, or to replace them with other defective parts. See, e.g., id. ¶¶ 2, 7, 14, 16, 17 (knowledge of the defect), 7, 17, 56, 58 (intent to conceal it). Further, as to reliance, Plaintiffs allege that they would not have purchased the Class Vehicles had they known of the headlamp issue. See id. ¶¶ 17, 18, 61, 99, 116, 127. Finally, Plaintiffs pled facts showing adequate grounds for damages based on costs of repair and being exposed to the risk of automobile accidents and moving violations. See, e.g., id. ¶¶ 6, 13, 17-19, 24, 26, 28, 38, 50. These facts support Plaintiffs' allegation that Defendants actively concealed the truth of the Class Vehicles' headlamp problem from

**United States District Court**
For the Northern District of California

1  the public.

2      The Court finds that Plaintiffs allege sufficient facts to

3  support a claim under the CLRA.  Defendants' motion to dismiss

4  Plaintiffs' CLRA claims is therefore DENIED.

5                    **ii.    Fraud by Omission**

6      To plead fraud by omission under California law, a plaintiff

7  must show (1) the concealment or suppression of material fact, (2)

8  a duty to disclose the fact to the plaintiff, (3) intentional

9  concealment with intent to defraud, (4) justifiable reliance, and

10  (5) resulting damages.  <u>SCC Acquisitions</u>, 207 Cal. App. 4th at 863.

11  Claims for fraud must be pled at a heightened standard of

12  specificity per Federal Rule of Civil Procedure 9(b).  However,

13  because a plaintiff bringing fraud by omission claims "will not be

14  able to specify the time, place, and specific content of an

15  omission as precisely as would a plaintiff in a false

16  representation claim," plaintiffs may plead fraud by omission by

17  alternative means.  <u>Falk</u>, 496 F. Supp. 2d at 1098-99.

18      The elements for fraud by omission were addressed in a

19  different context above, in which the Court found that Plaintiffs

20  stated a claim for Defendants' active concealment of a material

21  safety defect.  <u>See</u> <u>supra</u> Section IV.B.i.c.  The elements are the

22  same here, and the Court need not restate them.  The Court finds

23  that Plaintiffs have adequately pled a fraud by omission claim.

24  Defendants' motion to dismiss this claim is DENIED.

25                **iii.    Violations of the UCL**

26      California Business & Professions Code § 17200 prohibits acts

27  of "unfair competition," including any "unlawful, unfair or

28  fraudulent business act or practice."  "Because [section 17200] is

written in the disjunctive, it establishes three varieties of
unfair competition -- acts or practices which are unlawful, or
unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152
Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007).

Plaintiffs allege that Defendants' knowledge and concealment
of the Class Vehicles' headlamps' problems were "unfair competition
and unlawful, unfair, and fraudulent business practices" under the
UCL.  FAC ¶¶ 113-121.  Plaintiffs clarify in their opposition brief
that they plead violations of each prong.  Opp'n at 17-18.

### a.   Unlawful Practices

Plaintiffs can plead a UCL violation under the "unlawfulness"
prong by pleading that a business practice violated a predicate
federal, state, or local law. See Cel-Tech Commc'ns, Inc. v. Los
Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (Cal. 1999) (citing
State Farm Fire & Cas. Co. v. Superior Court, 45 Cal. App. 4th
1093, 1103 (Cal. Ct. App. 1996)).  Plaintiffs state that their
claims are predicated on Defendants' alleged violations of the CLRA
and California's express and implied warranty statutes. See Opp'n
at 18.  The Court finds that Plaintiffs' allegations showing that
Defendants' concealment violates the CLRA and California's express
warranty statute is sufficient to support Plaintiffs' claims under
the unlawful prong of the UCL.

### b.   Unfair Business Practices

To support their unfairness claim, Plaintiffs cite McKell v.
Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1473 (Cal. Ct.
App. 2006), which held that "[a] business practice is unfair within
the meaning of the UCL if it violates established public policy or
if it is immoral, unethical, oppressive or unscrupulous and causes

1  injury to consumers which outweighs its benefits."[5]  Under this

2  approach, California courts balance the "impact of [the business

3  practice] on its alleged victim" against "the reasons,

4  justifications, and motives of the alleged wrongdoer."  Id.

5  Specifically regarding safety issues, this Court has stated that

6  "[f]ailing to provide safety information is a practice that

7  violates public policy."  Mourning v. SmithKline Beecham Corp., No.

8  C 08-04929 WHA, 2009 WL 733873, at *4 (N.D. Cal. Mar. 17, 2009).

9  Plaintiffs' opposition brief clarifies that "Defendants violated

10 the unfair prong by, among other things, actively concealing the

11 headlight defect and associated costs."  Opp'n at 18.

12      As stated above, Plaintiffs allege sufficient facts to state a

13 CLRA claim premised on Defendants' failure to disclose a material

14 safety problem.  See Section IV.B.i, supra.  The Court finds that

15 this failure to disclose violates public policy as well as the

16 CLRA.  See Mourning, 2009 WL 733873, at *4.  Therefore Plaintiffs

17 adequately plead a violation of the unfairness prong of the UCL.

18              c.  **Fraudulent Business Practices**

19      To state a claim under the UCL's "fraudulent" prong,

20 plaintiffs must plead that a defendant's allegedly fraudulent

21 business practice is one "in which members of the public are likely

---

22 [5] California courts and the legislature have not specified which of
23 several possible "unfairness" standards is the proper one.  This
   Court recently found that the California Supreme Court would likely
24 adopt the approach to unfairness provided in Camacho v. Automobile
   Club of Southern California, 142 Cal. App. 4th 1394, 1402 (Cal. Ct.
25 App. 2006), which incorporated the three factors constituting
   unfairness under the Federal Trade Commission Act.  Lyons v. Bank
26 of America, N.A., No. 11-01232 CW, 2011 WL 3607608, at *10 (N.D.
   Cal. Aug. 15, 2011) (citing Camacho, 12 Cal. App. 4th at 1402).
27 However, without guidance from a controlling source, the Court
   cannot say that Plaintiffs' legal grounds for this claim are
28 improper, and Defendants have not argued that they are.

United States District Court
For the Northern District of California

1  to be deceived." <u>Id.</u> at *11 (citing <u>Morgan v. AT&T Wireless</u>

2  <u>Servs., Inc.</u>, 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009)).

3  The Court finds that because Plaintiffs have sufficiently stated a

4  claim for fraud by omission and have pled a violation of the CLRA

5  based on a duty to disclose, Plaintiffs sufficiently plead a

6  violation of the UCL under the fraudulent prong.

7      Plaintiffs have adequately pled violations of each prong of

8  the UCL.  Defendants' motion to dismiss this claim is DENIED.

9

10 **V.    CONCLUSION**

11     For the reasons explained above, Defendants Toyota Motor

12 Corporation and Toyota Motor Sales U.S.A., Inc.'s motion to dismiss

13 Plaintiffs Mui Ho, Shelda Anglin, and Ted Flory's First Amended

14 Class Action Complaint is GRANTED in part and DENIED in part.  The

15 Court orders as follows:

16 • Plaintiffs' claim for breach of implied warranty under the

17   Song-Beverly Act is DISMISSED with leave to amend as to

18   Plaintiff Ho.  This claim is undisturbed as to Plaintiff

19   Anglin.

20 • Plaintiffs' claim for breach of express warranty as to

21   Plaintiff Ho is DISMISSED WITH PREJUDICE.  This claim is

22   undisturbed as to Plaintiff Anglin.

23 • Plaintiffs' fraud by omission claim is undisturbed.

24 • Plaintiffs' CLRA claim is undisturbed.

25 • Plaintiffs' UCL claim is undisturbed.

26 Plaintiffs have leave to amend their claim for breach of implied

27 warranty under the Song-Beverly Consumer Warranty Act only if they

28 are able to plead that Plaintiff Ho purchased her Class Vehicle

from a dealer or retailer seller within the implied warranty period provided by that statute.  Plaintiffs have thirty (30) days from this Order's signature date to file an amended complaint.  All filings are subject to Rule 11, and since Plaintiffs have amended their complaint once, they may not re-plead any additional facts or causes of action without requesting leave from the Court.  If Plaintiffs do not file an amended complaint, the deficient claim may be dismissed with prejudice.

IT IS SO ORDERED.

Dated: March  14 , 2013

UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California